FREUND & BRACKEY LLP
Jonathan D. Freund (SBN 157357)
Stephen P. Crump (SBN 251712)
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310-247-2165
Fax: 310-247-2190

Attorneys for Plaintiffs,
    RED EAGLE ENTERTAINMENT, LLC
    and MANETHEREN, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RED EAGLE ENTERTAINMENT, LLC, a California limited liability company; and MANETHEREN, LLC, a California limited liability company;<br><br>        Plaintiffs,<br><br>        v.<br><br>BANDERSNATCH GROUP, INC., a South Carolina corporation; HARRIET P. MCDOUGAL, an individual; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.: 2:15-cv-1038<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH CAUSES OF ACTION PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:   April 27, 2015<br>Time:   1:30 p.m.<br>Ctrm:   6 |

Plaintiffs RED EAGLE ENTERTAINMENT, LLC ("Red Eagle") and

MANETHEREN, LLC ("Manetheren") (sometimes collectively referred to herein as

"Plaintiffs") hereby file the following Opposition to Defendants BANDERSNATCH

GROUP, INC. ("Bandersnatch") and HARRIET P. MCDOUGAL ("Ms. McDougal")

(sometimes collectively referred to herein as "Defendant")s' Motion to Dismiss the

Second, Third and Fourth Causes of Action Contained in the Complaint Pursuant to Fed.

R. Civ. P. 12(b)(6).

///

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This dispute arises from the disgruntled wife of a deceased author having decided she was unhappy with the fact her late husband agreed to option certain motion picture and television rights in his literary work to the Plaintiffs.  And, in an effort to subvert those rights and otherwise undermine Plaintiffs' ability to produce a television show or motion picture, she set about disparaging Plaintiffs and calling into question the legitimacy of the deal struck many years before.

In particular, after Plaintiffs released a pilot based on the literary series, the rights to which they were contractually entitled, Defendant McDougal made representations to the effect she did not believe Plaintiffs have such rights and would do what she could to prevent Plaintiffs from exercising their rights in the future.  This is the essence of a slander of title and business interference claim:  McDougal publicly called into questions Plaintiffs' rights and purposely undermined Plaintiffs' project thereby disparaging Plaintiffs and interfering in their economic relationship with various business partners.

Instead of taking these allegations head on, Defendants have filed a patently meritless motion to dismiss, claiming certain privileges insulate them from liability.  What they ignore, however, are the allegations regarding their malicious intent, which removes any purported privilege and otherwise strips them from any form of summary protection against these claims.

What is more, all of the necessary elements for each cause of action have been stated and this Court should deny Defendants' motion in full and require an answer to be filed forthwith.

## II.   FACTUAL BACKGROUND

According to the allegations of the Complaint, the late Robert Jordan, author of the fantasy series "Wheel of Time" (the "Property") agreed to grant Manetheren an option to purchase motion picture, television and allied rights in and to the first book in the Property,

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

2

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH
CAUSES OF ACTION PURSUANT TO FED. R. CIV. P. 12(b)(6)

entitled, "The Eye of The World" in 2004 (the "Option Agreement").  (Complaint at ¶ 13).
The Option Agreement provided that the rights were to revert back to the author in the
event that Manetheren did not produce a film or television series by January 11, 2013.
(*Id.*).  In 2008, Manetheren exercised its option to purchase the television, film and
ancillary rights granted under the Option Agreement and paid the late Mr. Jordan's
successor-in-interest Bandersnatch a sum of $465,000 therefor.  (*Id.* at ¶ 14).  Manetheren
and Bandersnatch later agreed to extend the reversion date to February 11, 2015.  (*Id.* at ¶
15).

In 2009, during the option period, Manetheren entered into a Derivative Acquisition
Agreement with Universal Pictures ("Universal") in which Universal was granted a
limited-time interest in the Property to make film and television productions.  (*Id.* at ¶ 17).
This agreement was to expire on its own terms if Universal did not commence a
production before February of 2014.  (*Id.*).  Universal did not commence principal
photography of a motion picture based upon the Property as required under this agreement
and all film and television rights reverted to Manetheren in February of 2014.  (*Id.*).
Manetheren informed the late Robert Jordan's surviving wife, McDougal and her attorney
of this fact in April of 2014.  (*Id.* at ¶ 20).

After the relationship with Universal terminated in 2014, Plaintiffs began
discussions with Sony Pictures Television ("Sony") and Radar Pictures LLC ("Radar")
regarding a television series project.  (*Id.* at ¶ 18).  During this time period, Plaintiffs also
"entered into a series of agreements with affiliates and independent third parties for the
purpose of producing related television programming, films and video games, and exploit
all ancillary rights in the Property" including without limitation, "Radar (television
production), Red Eagle Games (video game development), and REE Productions Inc. (film
and television production).  (*Id.* at ¶ 19).

In July of 2014, McDougal and her attorney met with Manetheren, Radar and Sony
and entered into discussions regarding her role as a consultant in the potential Manetheren-

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH
CAUSES OF ACTION PURSUANT TO FED. R. CIV. P. 12(b)(6)

1  Sony television series as well as a possible extension of the February 2015 reversion date.

2  (*Id.* at ¶¶ 21–22).  Upon information and belief, "McDougal developed an intimate

3  knowledge of Plaintiffs' existing contractual relationships" during these meetings.  (*Id.* at ¶

4  23).

5       In 2014, Plaintiffs produced a pilot episode of the television program, which was

6  exhibited nationally through Fox Broadcasting Company's FXX cable network on

7  February 8-9, 2015, prior to the expiration of the option period.  (*Id.* at ¶ 24).

8       Subsequent to the release of this pilot episode, McDougal published a statement on

9  an online social media site casting doubt upon Plaintiffs' rights to produce the Pilot by

10  unequivocally denying knowledge of those rights while asserting that Universal still

11  possessed rights to produce the Program.  (*Id.* at ¶¶ 25–26).  She asserted that she was

12  "dumbfounded" by the release of the Pilot and assured her readers that she would be

13  "taking steps to prevent its reoccurrence."  (*Id.* at ¶ 26).  The Complaint alleges that

14  McDougal "made these representations with knowledge of their falsity in an effort to

15  maliciously disparage Plaintiff Manetheren, while intentionally interfering with the

16  company's contractual relationships and prospective economic advantage."  (*Id.* at ¶ 27).

17       Plaintiffs go on to allege that "McDougal's statements have caused substantial and

18  material harm to, and interfered with Manetheren's business relationship with each of

19  these parties" and that "McDougal's public comments have harmed Manetheren's ability

20  to enter into new contractual relationships, such as with Sony, both by calling into question

21  the propriety of Manetheren's rights in the Property and by causing public opinion to set

22  against any film or television production that Manetheren might authorize."  (*Id.* at ¶ 31).

23  **III.   LEGAL ARGUMENT**

24       **A.   <u>Legal Standard for Motions to Dismiss.</u>**

25       A complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v.*

26  *Iqbal*, 556 U.S. 662, 697 (2009).  When a party fails to state a claim upon which relief can

27  be granted, a defendant may move to dismiss that claim. Fed. R. Civ. Proc. 12(b)(6).  In

28

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

deciding a 12(b)(6) motion, the Court must assume that allegations in the challenged complaint are true and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir. 1996). The court must then address whether the well-pleaded facts, and reasonable inferences therefrom, give rise to a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).

**B.**     **Plaintiffs Have Adequately Pled the Essential Elements of a Claim for Slander of Title.**

*1.*     ***The Complaint Successfully Pleads Around the Qualified Privilege of Common Interest.***

The existence of the privilege of "common interest" is an affirmative and conditional defense to an action for slander of title. *See Palmer v. Zaklama*, 109 Cal. App. 4th 1367, 1380 (2003). Therefore the burden is on *the defendants* to plead and prove the challenged publication was made under circumstances that confer the privilege. *Id.* Where the defense disclosed in the complaint is conditional rather than absolute, a Rule 12(b)(6) motion to dismiss should be denied. *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

Even in the event that a communication falls within the qualified privilege of common interest, plaintiff may plead and prove that the privilege is not available as a defense in the particular case, e.g. because of malice. *Smith v. Commonwealth Land Title Ins. Co.* 177 Cal. App. 3d 625, 630–631 (1986). Malice in this context means that the publication at issue was "motivated by hatred or ill will towards the plaintiff," or "that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.'" *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413 (1976).

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

1   It is thus not Plaintiffs' burden to allege that Ms. McDougal's statements fall

2   outside of the qualified privilege of common interest.  Even though Ms. McDougal could

3   have been arguably asserting her rights to the Wheel of Time property, she also falsely

4   casts doubts on Plaintiffs' rights by implying that they did not have the authority to

5   produce the pilot, that Universal in fact had that right, and that she was going to "tak[e]

6   steps to prevent its reoccurrence."  Since Ms. McDougal is not simply asserting her rights

7   to the property, but rather is calling into question Plaintiff's rights to the same, the

8   common interest privilege should not even be triggered.

9   Even if it was, Plaintiffs have successfully pled around the defense, *i.e.,* they have

10   alleged Defendants *made this publication with malice*.  The Complaint alleges that Ms.

11   McDougal had an "intimate knowledge" of Plaintiffs' plans through meetings and

12   communications taking place in the months before the publication.  (Complaint at ¶¶ 21–

13   23).  The Complaint alleges at paragraph 27 that Ms. McDougal then publicly denied her

14   knowledge of these plans "in an effort to maliciously disparage Plaintiff Manetheren" in

15   paragraph 30 that "McDougal's comments about Universal holding rights in the Property

16   were made in bad faith and were intended to devalue and cast ridicule on the Picture."

17   Accordingly, Plaintiffs have successfully pled the "second element" of their claim

18   for slander of title.

19   ### *2.    Plaintiffs have adequately alleged pecuniary loss.*

20   For purposes of the "pecuniary loss" element of a cause of action for slander of title,

21   the property owner may recover for the impairment of the "vendibility" of his property

22   without showing the loss was caused by prevention of a particular sale.  *Glass v. Gulf Oil*

23   *Corp.,* 12 Cal. App. 3d 412, 424 (1970).  "The disparaging matter may, if widely

24   disseminated, cause pecuniary loss by depriving its possessor of a market in which, but for

25   the disparagement, his land or other thing might with reasonable certainty have found a

26   purchaser."  *Id.*

27

28

*Freund & Brackey LLP*
*427 North Camden Drive*
*Beverly Hills, CA 90210*

6

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH
CAUSES OF ACTION PURSUANT TO FED. R. CIV. P. 12(b)(6)

California law also expressly recognizes that attorney fees and costs, when they are necessary to remove the doubt cast on the value of the plaintiff's property, are a form of pecuniary damages in slander of title cases, and "such damages are presumptively sufficient to satisfy the pecuniary damage element of the cause of action." *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC,* 205 Cal. App. 4th 999, 1032 (2012). Attorney fees and costs in a legal action for declaratory relief, in which plaintiffs seek a judgment declaring their rights in relation to a piece of property, are considered "special damages" in a slander of title case. *Contra Costa County Title Co. v. Waloff*, 184 Cal. App. 2d 59, 68  (1960) (attorney fees and costs in legal action to clear slandered title are "special damages" in slander of title case); *Caira v. Offner*, 126 Cal. App. 4th 12, 24–25 (2005) (declaratory relief action akin to action to quiet title).

The Complaint alleges that McDougal's publications directly interfered with Manetheren's ability to enter into a new contract with Sony for production of a television series by "calling into question the propriety of Manetheren's rights in the Property and by causing public opinion to set against any film or television production that Manetheren might authorize." (Complaint at ¶ 31).  Moreover, to remedy this interference, Plaintiffs' fifth cause of action for declaratory relief seeks a "declaration regarding the rights and other legal relations of Plaintiffs and Defendants, including *a declaration regarding Plaintiffs' right to exploit the Property*." (*Id.* at ¶ 62) (emphasis added).  Thus, Plaintiffs adequately allege pecuniary loss.

### C.   Plaintiffs have Adequately Pled the Essential Elements of a Claim for Intentional Interference With Contractual Relations.

Plaintiffs make sufficient factual allegations of interference with third party contracts to state a facially plausible claim for intentional interference with contractual relations.

In paragraph 19 of the Complaint, Plaintiffs allege that they "entered into a series of agreements with affiliates and *independent third parties* for the purpose of producing

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

7

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH
CAUSES OF ACTION PURSUANT TO FED. R. CIV. P. 12(b)(6)

1  related television programming, films and video games and exploiting all ancillary rights

2  in the Property," including without limitation "Radar (television production) . . . REE

3  Productions Inc. (film and television production)." (emphasis added).  The fact that

4  Plaintiffs may have also alleged a contract with an affiliate is immaterial.

5       Plaintiffs go on to allege that Defendants, with knowledge of these contracts, made

6  disparaging statements casting doubt on Plaintiffs' right to produce a pilot which "caused

7  substantial and material harm to, and interfered with Manetheren's relationship with each

8  of these parties" by making contractual performance more expensive and difficult.

9  (Complaint at ¶¶ 31, 47–49).  Plaintiffs have stated a claim for intentional interference

10  with contractual relations.

11      **D.**    **Plaintiffs have Adequately Pled the Essential Elements of a Claim for**

12      **Intentional Interference With Prospective Economic Relations.**

13       Defendants are correct that a cause of action for intentional interference with

14  prospective economic relations requires an allegation of independent wrongful conduct by

15  some measure beyond the fact of the interference itself.  Plaintiffs have done precisely that.

16       It is well-settled that defamatory statements are a wrongful means of interference

17  and make an interference improper.  *Della Penna v. Toyota Motor Sales, U.S.A.,* 11 Cal.

18  4th 376, 410–411 (1995); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 2014 U.S. Dist.

19  LEXIS 140553 (N.D. Cal. Oct. 1, 2014); *Pmc, Inc. v. Saban Entm't*, 45 Cal. App. 4th 579,

20  602–603 (1996); Rest. 2d of Torts, § 767.

21       The crux of Plaintiffs' interference claim is the publication of Ms. McDougal's

22  "false statements concerning [their] lack of authority to produce the Pilot on or around

23  February 9, 2015," and the resulting disruption.  (*See* Complaint at ¶ 56).  These

24  statements are defamatory and also provide the basis for the independently actionable tort

25  of slander of title.  (*Id.* at ¶¶ 38–45).  Thus, Plaintiffs have pled independent wrongful

26  conduct such to sustain a cause of action for intentional interference with prospective

27  economic relations.

28

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

8

**IV.    CONCLUSION**

        For all the foregoing reasons, Plaintiffs sufficiently allege causes of action for slander of title, intentional interference with contractual relations, and intentional interference with prospective economic relations.  The Motion to Dismiss should be denied in its entirety.


DATED: April 6, 2015                                FREUND & BRACKEY LLP


                                         By:    /Stephen P. Crump/
                                                Jonathan D. Freund
                                                Stephen P. Crump,
                                                Attorneys for Plaintiffs,
                                                RED EAGLE
                                                ENTERTAINMENT, LLC and
                                                MANETHEREN, LLC

Freund & Brackey LLP
427 North Camden Drive
Beverly Hills, CA 90210

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH
CAUSES OF ACTION PURSUANT TO FED. R. CIV. P. 12(b)(6)